UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| GLOBAL TEL*LINK CORPORATION, | |
| Plaintiff, | |
| v. | Civil Action No. 3:13–CV–713 |
| SECURUS TECHNOLOGIES, INCORPORATED, | |
| Defendant. | |

## MEMORANDUM OPINION

THIS MATTER is before the Court on a Motion to Transfer Venue Under 28 U.S.C. § 1404(a) ("Motion to Transfer") (ECF No. 10) and a Motion for Leave to File Supplemental Memorandum and Evidence ("Motion to Supplement") (ECF No. 36) filed by Defendant Securus Technologies, Incorporated ("Securus"). Plaintiff Global Tel*Link Corporation ("GTL") filed a four-count Complaint on October 21, 2013, alleging infringement of four patents owned by GTL. On November 25, 2013, Securus asserted patent invalidity counterclaims, which seek declaratory judgment finding the four patents in issue invalid, and moved to transfer the case to the Northern District of Texas. For the reasons that follow, the Court will DENY the Motion to Supplement, GRANT the Motion to Transfer, and TRANSFER this action to the Northern District of Texas.

## I.   BACKGROUND

GTL is a Delaware corporation that provides inmate telephone services, software solutions, and equipment to correctional facilities throughout the country. Its headquarters were formerly in Mobile, Alabama; however, in 2006, members of GTL's senior management relocated to Reston, Virginia. GTL has acquired several other corporations in recent years, including Value-Added Communications, Incorporated ("VAC"), which is now a wholly owned

subsidiary of GTL headed by many of the same executive officers that manage GTL from Reston, Virginia.

Securus disputes the fact that GTL's headquarters is actually in Virginia, arguing that GTL is actually based in Mobile, Alabama. The record indicates that GTL has approximately 412 employees working from various offices across the United States, as well as 132 employees who work from home offices. Notably, GTL maintains an office and employees in Plano, Texas, and "[m]ost of GTL's back-office communications infrastructure and its support services remain in Mobile." (Pl.'s Mem. Opp. Mot. Transfer, Ridgeway Decl. ¶ 10.) Additionally, GLT's website indicates that its headquarters are in Mobile, Alabama, a 2010 contract between GTL and the Mississippi Department of Corrections states that GTL's "principle place of business" is in Mobile, Alabama, and in recent patent assignments, GTL's address was noted as being in Mobile, Alabama.

Securus is a Delaware corporation with its principle place of business in Dallas, Texas. It provides call processing, telephone services, digital recording, inmate management systems, and video applications to correctional facilities under multi-year contracts. Securus has its major call-processing and data center in Dallas, Texas, as well as a data center in Atlanta, Georgia. Although Securus sells its products to correctional facilities in this district, it has no call-processing or data center in Virginia.

In this action, GTL has asserted that Securus is infringing four of its patents ("Asserted Patents"). The first two of these Asserted Patents generally claim products and services related to centralized call management: (1) the '732 patent, entitled "Centralized Voice Over IP Recording and Retrieval Method and Apparatus," which discloses "an apparatus and methodology for recording, at a central data center, telephone conversations originating from remote locations" and which has particular—though not exclusive—utility in the area of correctional services; and (2) the '021 Patent, entitled "Digital Telecommunications Call Management and Monitoring System," which discloses "a centralized, digital, computer-based

telephone management system for authenticating users of a telephone system in an institutional facility" and which includes accounting and management capabilities in both analog and digital environments. GTL's remaining two Asserted Patents generally claim products related to voice recognition and verification: (3) the '243 patent, entitled "Telecommunication Call Management and Monitoring System," which discloses "a secure telephone call management system . . . for authenticating users of a telephone system in an institutional facility" and which operates "by using a personal identification number, biometric means, and/or radio frequency means; and (4) the '736 patent, entitled "Telecommunication Call Management and Monitoring System with Voiceprint Verification," which discloses "a secure telephone call management system . . . for authenticating users of a telephone system in an institutional facility" and which monitors telephone conversations and terminates the telephone call if a user is not authenticated.

The '732 patent was invented by GTL employee Joseph Clifton Anders, who currently resides in Mobile, Alabama. GTL has owned the '732 patent since its issue in 2009. Stephen Hodge is the inventor of the '021, '243, and '736 patents. He is the founder and former Chief Technology Officer of VAC, and he currently works as a Senior Vice President of GTL. Hodge works approximately one week per month in Virginia, and spends the remainder of his time living and working from his home in Aubrey, Texas, some fifty miles from Dallas, Texas. On October 17, 2013, VAC assigned the three Asserted Patents invented by Hodge to GTL. On October 21, 2013, GTL filed suit against Securus in this Court alleging infringement of the Asserted Patents.

Also on October 21, 2013, GTL filed an answer and counterclaims in an action previously brought by Securus in the Northern District of Texas. In the Texas lawsuit, filed on August 2, 2013, Securus alleged that GTL infringed four patents owned by Securus, including the '167. Securus asserts that the '167 patent is entitled "Centralized Call Processing" and discloses systems and methods that provide a centralized architecture for call processing using voice-over internet protocol ("VoIP"). In GTL's Texas counterclaims, it asserts that Securus is infringing

three separate patents it holds. None of the seven patents at issue in the Texas litigation shares a common parent application, prosecution history, or claims with the Asserted Patents. However, a substantial number of the patents involved in the Texas litigation, as well as the Asserted Patents in this litigation, claim VoIP telephone products and services with particular utility in correctional facilities.

## II.   LEGAL STANDARD

Pursuant to 28 U.S.C. § 1404, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "The decision whether to transfer an action under the statute is committed to the sound discretion of the district court." *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 668 (E.D. Va. 2010) (citing *One Beacon Ins. Co. v. JNB Storage Trailer Rental Corp.*, 312 F. Supp. 2d 824, 828 (E.D. Va. 2004)). District courts determining whether to grant a motion to transfer under § 1404(a) to a transferee forum where the action could initially have been brought "typically consider[]: (1) plaintiff's choice of forum, (2) convenience of the parties, (3) witness convenience and access, and (4) the interest of justice." *Id.* (citing *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 736 (E.D. Va. 2007)). "The movant bears the burden of showing that transfer is proper." *JTH Tax*, 482 F. Supp. 3d at 736 (citing *Cognitronics Imaging Sys. v. Recognition Research, Inc.*, 83 F. Supp. 2d 689, 696 (E.D. Va. 2000)).

## III.   DISCUSSION

### A.  TRANSFEREE FORUM AS INITIAL FORUM

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). "[A] corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). In this case, the parties agree that Securus was, and

continues to be, subject to personal jurisdiction in the Northern District of Texas. Additionally, GTL concedes that it is also subject to personal jurisdiction in the Northern District of Texas. As such, this action could originally have been brought in the transferee forum. Whether transfer is appropriate turns on the convenience of transfer to the parties and witnesses and the interests of justice. *See* 28 U.S.C. § 1404(a).

### B. PLAINTIFF'S CHOICE OF FORUM

"The plaintiff's choice of forum is typically entitled to 'substantial weight,' especially where the chosen forum is the plaintiff's home forum or bears a substantial relation to the cause of action." *Heinz Kettler*, 750 F. Supp. 2d at 667 (quoting *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 633 (E.D. Va. 2003)). However, "[f]ederal courts are not solicitous of plaintiffs claiming 'substantial weight' for their forum choice where the connection with the forum is limited to sales activity without more." *Acterna, LLC v. Adtech, Inc.*, 129 F. Supp. 2d 936, 938 (E.D. Va. 2001) (collecting cases and finding that limited sales alone did not make this district the plaintiff's "home forum").

GTL and Securus ardently dispute whether this district is GTL's "home forum," or whether this forum's connection to GTL's claims is "limited to sales activity without more." For the purposes of determining appropriate venue, a party's "home forum" is one in which it has citizenship, *see DiFederico v. Mariott Int'l, Inc.*, 714 F.3d 796 (4th Cir. 2013), and a corporation is a citizen of the state in which its principal place of business is located, 28 U.S.C. § 1332(c)(1). The Supreme Court has explained that

> "principal place of business" is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's 'nerve center.' And in practice it should normally be the place where the corporation maintains its headquarters--provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the 'nerve center,' and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion).

*Hertz Corp. v. Friend*, 559 U.S. 77, 92 (2010). In this case, GTL has asserted that its principle place of business is in Reston, Virginia. GTL notes that 5 of its top-level executives live and work exclusively in Reston, Virginia, and 7 other executive officers split their time between Virginia and various other locations. GTL also notes that monthly executive staff meetings, quarterly board meetings, and annual business planning meeting are held in Reston. Securus argues that Alabama is actually GTL's headquarters, as represented by GTL on its website, in a 2010 contract, and to the United States Patent and Trademark Office ("PTO") as recently as October 18, 2013.[1]

Securus additionally has moved the Court to file supplemental briefing regarding the location of GTL's and VAC's principal places of business. Securus makes this request both to supplement its argument regarding GTL's principal place of business and also to dispute an assertion by GTL—first made explicit at the hearing held on January 16, 2014—that VAC's principal place of business is also in Reston, Virginia. For the reasons that follow, the Court finds that the requested supplemental briefing is unnecessary because, even assuming that GTL's and VAC's principal places of business are in this district, transfer is appropriate. Accordingly, the Motion to Supplement will be denied.

Although GTL's daily operations appear to occur outside this district, the evidence before the Court demonstrates that GTL's principal place of business is in this district. From their permanent offices in Reston, Virginia, GTL's executive officers hold meetings, perform business planning, and execute contracts, among other activities. *See Hertz*, 559 U.S. at 92-93. Reston, Virginia, therefore, is the center of "overall direction, control, and coordination" of GTL's operations. *Id.* at 96. This is true despite the fact that the bulk of GTL's publicly visible business activities occur outside this district. *Id.* Because a corporation is a citizen of the state in which it has its principal place of business, and a party's home forum is one in which it has citizenship,

---

[1] The assignment of the patents in issue was recorded with the PTO on October 18, 2013, and GTL's address was listed as being in Mobile, Alabama.

the Court finds that the Eastern District of Virginia is GTL's home forum. Accordingly, GTL's choice of forum is entitled to some weight. *See Atl. Marine Constr. Co. v. United States Dist. Court*, 134 S. Ct. 568, 581 n.6 (2013) (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1995)).

However, "the weight given to plaintiff's choice of venue varies with the significance of the contacts between the venue chosen by plaintiff and the underlying cause of action." *Koh*, 250 F. Supp. 2d at 635 (internal quotation marks and citation omitted). "[I]f none of the operative events in the lawsuit took place in the district in which the action was originally filed, a motion to transfer to the district in which the events occurred is likely to succeed." *Finmeccanica S.p.A. v. General Motors Corp.*, No. 1:07cv794, 2007 U.S. Dist. LEXIS 85268, at *12 (E.D. Va. Nov. 19, 2007) (quoting 17-111 James Wm. Moore, et al., *Moore's Federal Practice - Civil* § 111.13(1)(d)(I) n. 23 (3d ed. 2005)). This is true even when the plaintiff chose originally filed the action in his home forum. *See* 17-111 James Wm. Moore, et al., *Moore's Federal Practice* § 111.13 (3d ed. 2005).

Despite the fact that GTL's principal place of business is located in Virginia, there is only a weak connection between this forum and the instant cause of action. *See Koh*, 250 F. Supp. 2d at 635; *Gebr. Brasseler GmbH & Co. KG v. Abrasive Tech., Inc.*, No. 1-:8CV1246, 2009 WL 874513, at *2 (E.D. Va. Mar. 27, 2009) ("Even when the plaintiff sues in its home forum, that fact is not by itself controlling and the weight of that factor depends on the nexus tying the case to the forum." (citing *Bd. of Tr. v. Baylor Heating & Air Conditioning, Inc.,* 702 F. Supp. 1253, 1257 (E.D. Va. 1988))). GTL's reliance on *comScore, Incorporated v. Integral Ad Science, Incorporated*, 924 F. Supp. 2d 677 (E.D. Va. 2013), is unavailing. In *comScore*, the court placed heavy reliance on the fact that Plaintiff was "an active developer of the technology protected by those patents" at issue in the litigation. 924 F. Supp. 2d at 683; *see also Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*, 928 F. Supp. 2d 863, 870 (2013) (granting a plaintiff's initial choice of forum substantial deference in part because it researched and developed the patented

technologies there). Unlike the plaintiff in *comScore*, GTL does not produce or develop the disputed technology at any location in this district.

Further, while "active utilization of that technology, along with the production and sale of products based on it, all in this District, [creates] a significant, legitimate connection to the Eastern District of Virginia," *comScore*, 924 F. Supp. 2d at 683, limited sales activity creates an insufficient connection to grant a plaintiff's choice of forum substantial weight, *Acterna*, 129 F. Supp. 2d at 938. Although GTL asserts that it provides inmate telephone and software services to correctional facilities "throughout the country" and, specifically, to sixty-four facilities in this district, GTL and Securus both sell their products nationwide in direct competition with one another. There is no indication that GTL's sales in this district are more significant than in any other judicial district in the nation. *See Intercarrier Commc'ns v. Glympse, Inc.*, No. 3:12-CV-767, 2013 U.S. Dist. LEXIS 113572, at *8 (E.D. Va. Aug. 12, 2013) (noting that use of disputed software by Virginia residents no greater than by residents of any other state).

On balance, the Court finds that this forum's only connection to the cause of action—beyond GTL's citizenship—is sale of the disputed technology, which appears to be no greater in this forum than in any other district in the country. Because GTL filed in its home forum, its initial choice is entitled to some deference; but because the connection between this forum and the cause of action is somewhat attenuated, GTL's initial choice is entitled to "less deference than usual." *Bluestone Innovations, LLC v. LG Elecs., Inc.*, 940 F. Supp. 2d 310, 315 (E.D. Va. 2013). "Where, as here, the Court has found that Plaintiff's choice of forum in not entitled to substantial weight, Defendants are well on their way to meeting their burden. A great weight tipping the scales against transfer has been removed. Defendants must further show only that the balance of the conveniences weighs sufficiently in favor of transfer to overcome the weight now afforded Plaintiff's choice." *Id.* at 316 n.9.

//

//

C. CONVENIENCE OF THE PARTIES

In assessing this factor, courts generally consider "ease of access to sources of proof, the cost of obtaining the attendance of witnesses, and the availability of compulsory process." *Samsung Elecs. Co. v. Rambus, Inc.,* 386 F. Supp. 2d 708, 717 n.13 (E.D. Va. 2005). Convenience to parties alone will rarely justify transfer, particularly where transfer would merely "'shift the balance of inconvenience' from defendant to plaintiff." *Baylor*, 702 F. Supp. at 1258 (quoting *Eastern Scientific Marketing v. Tekna-Seal Corp.*, 696 F. Supp. 173, 180 (E.D. Va. 1988)). However, Securus persuasively argues that this factor favors transfer because, although transfer will shift some inconvenience to GTL, the Northern District of Texas will afford easier access to sources of proof. Specifically, the Northern District of Texas is significantly more convenient because the allegedly infringing technology was developed and produced there, and as such, the vast majority of relevant witnesses and documents are located in the transferee forum.[2]

Courts have noted that "that there is a 'tension in transfer motions between the duty to file such motions early in the action and the need to support that motion with affidavits identifying witnesses and the materiality of their testimony, information which may not be known until later in the case.'" *Koh*, 250 F. Supp. 2d at 636 (quoting *Affinity Memory & Micro, Inc. v. K & Q Enters.*, 20 F. Supp. 2d 948, 955 n.13 (E.D. Va. 1998)). "Furthermore, it is permissible to infer, absent any contrary evidence from the non-movant, that witnesses are located at or near the center of the allegedly infringing activities and that witnesses involved in the design and manufacture of the accused products are material." *Id.* at 636-37 (citing *Corry v. CFM Majestic, Inc.*, 16 F. Supp. 2d 660, 667 n.16 (E.D. Va. 1998)). Although Securus has not identified particular witnesses that will testify in this action, it has reasonably asserted that

---

[2] The Parties spend some time arguing over which forum would be more convenient for Stephen Hodge, the inventor of three of the four Asserted Patents. Mr. Hodge is splits his time between Aubrey, Texas and Virginia, arguably spending more time in Texas where he resides and works from a home office. As such, it appears that either forum would be equally convenient for Mr. Hodge, and accordingly, the Court does not consider him in its analysis. Similarly, the Court does not consider convenience to Mr. Anders, inventor of the '732 patent, because he lives and works in Mobile, Alabama, making either potential forum equally inconvenient.

witnesses are "located where the alleged unlawful activities took place -- the 'center of activity' of the case." *Kabat v. Bayer Cropscience LP*, No. 3:07-CV-555, 2008 U.S. Dist. LEXIS 41187, at *9 (E.D. Va. May 22, 2008). As such, Securus has sufficiently alleged without a supporting affidavit that a significant number of party witnesses will be more conveniently accessed in the transferee forum.

Similarly, the majority of the documentary evidence that will bear on Securus's alleged infringement of the Asserted Patents is located in the Northern District of Texas. While some courts have noted that the easy transmission of electronic documents minimizes the inconvenience of transporting and accessing records, *see Newman v. Advanced Tech. Innovation Corp.*, No. 1:12-CV-24, 2012 WL 1414859, at *3 (E.D. Va. Apr. 20, 2012), the Federal Circuit has held that entirely discounting the inconvenience associated with record transportation would render superfluous the access to evidence factor, *In re Genentech*, 566 F.3d 1338, 1346 (Fed. Cir. 2008). Although access to electronic documentation somewhat minimizes the importance of this factor, Securus would still be inconvenienced by any requirement to transport all documentation related to its alleged infringement of the Asserted Patents to this district.

GTL is correct to assert that transfer will shift some inconvenience between the parties because, in the event of transfer, GTL will be forced to bring witnesses and documentation to the transferee forum. However, the bulk of testimony and evidence related to patent infringement actions "typically involve[s] the testimony of those associated with the development and production of the allegedly infringing product." *Hunter Eng'g Co. v. ACCU Indus.*, 245 F. Supp. 2d 761, 775 (E.D. Va. 2002). Securus has asserted that the persons most knowledgeable about the design, development, functionality, marketing, and sales of the accused products are all located in the transferee forum along with the vast majority of its employees. While GTL has asserted that its Virginia-based executives could provide evidence related to GTL's products, marketing, competition with Securus, and lost profits, there is no indication that these

executives are the best suited or sole employees capable of presenting such evidence.[3] This is particularly true in light of the fact that GTL concedes that it has employees in the transferee forum and appears to have only a handful of top-level executives in this district. In contrast, there is no evidence on the record to suggest that Securus has significant witnesses or sources of proof anywhere other than the transferee forum.

As such, while transfer to the Northern District of Texas would shift some inconvenience to GTL, the ease of access to witnesses and records related to infringement of the Patents, as well as the relative cost of witness attendance, strongly favors transfer.[4]

D.  WITNESS CONVENIENCE AND ACCESS

In assessing the third factor, courts draw a distinction between party witnesses and non-party witnesses, *Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685, 693 (E.D. Va. 2007), but give less weight to the witness convenience factor "when the appearance of witnesses can be secured without the necessity of compulsory process," *id.* at 668-69. As discussed above, many more relevant party witnesses are located in the transferee forum than in this district. The majority of the non-party witnesses identified by GTL and Securus do not reside in either judicial district. These non-party witnesses appear to reside in Washington, D.C., South Carolina, New York, and Alabama. Only the prosecuting attorneys residing in Washington, D.C., will be more inconvenienced by travel to the Northern District of Texas than by travel to this Court. As such, this factor weighs only slightly against transfer.

E.  INTERESTS OF JUSTICE

In evaluating whether the interest of justice weighs in favor of transfer, the Court looks to "the public interest factors aimed at systemic integrity and fairness." *Heinz Kettler*, 750 F.

---

[3] GTL's Chief Financial Officer, Chief Marketing Officer, Senior Vice President of Sales, and Senior Vice President of Research and Development all split their time between Reston and other cities.

[4] The only non-party witnesses apparently within the subpoena power of either this Court or those in the Northern District of Texas are the prosecuting attorneys of the '736 patent. However, there is no indication that compulsory process will be necessary to obtain these attorneys' testimony, particularly in light of their relationship with GTL. *See Heinz Kettler*, 750 F. Supp. 2d at 669.

Supp. 2d at 669-70 (quoting *Byerson v. Equifax Info. Servs.*, LLC, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006)). "The most prominent elements of systemic integrity are judicial economy and the avoidance of inconsistent judgments." *Id.* Similarly, "[f]airness is assessed by considering factors such as docket congestion, the interest in having local controversies decided at home, knowledge of applicable law, unfairness with burdening forum citizens with jury duty, and interest in avoiding unnecessary conflicts of law." *Id.*

GTL asserts that this action is likely to be resolved more quickly here, on the "rocket docket," than in the Northern District of Texas. However, relative docket speeds are rarely a decisive factor in transfer analysis. *Convergence Techs. (USA), LLC v. Microloops Corp.,* 711 F. Supp. 2d 626, 643-44 (E.D. Va. 2010). Further, the interests of justice may actually be harmed by retaining lawsuits with minimal connections to this district. *See Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 997 (E.D. Va. 2011). As discussed *supra*, GTL has not shown that there is a significant connection between this district and the underlying cause of action. As such, this Court's relative docket speed does not weigh in favor of transfer.[5]

GTL has accurately noted that the Asserted Patents in this action differ from those at issue in the pending litigation between the Parties in the Northern District of Texas. However, despite the fact the prosecution histories, parent applications, and technologies at issue differ somewhat, they all concern services, systems, and products related to the provision of VoIP-based call processing systems for correctional facilities. The risk of inconsistent judgments likely is minimal where there is no allegation that the patent claims overlap; however, significant judicial economy will be achieved by transfer in this case. GTL and Securus compete directly in the field of correctional telecommunications and are already engaged in litigation in the Northern District of Texas. Transfer would require only one court to familiarize itself with the technology embodied in the patents being disputed by the Parties. It would be inefficient,

---

[5] Additionally, while the Court does not find that GTL has engaged in overt forum shopping, the parties have each implied that a litigation advantage may be achieved by this action's speedy resolution. These arguments highlight the propriety of adjudicating both this dispute and that already pending in the Northern District of Texas in a single forum and with relatively equal speed.

therefore, for the Parties to wage—and the Court to referee—this dispute on two different fronts. *Accord A10 Networks, Inc. v. Brocade Commc'ns, Inc.*, No. SAC11-01378-JST, 2011 U.S. Dist. LEXIS 155697, at *14-16 (C.D. Cal. Nov. 8, 2011); *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1261 (W.D. Wash. 2005). The interests of justice, therefore, strongly favor transfer.

## IV. CONCLUSION

GTL's choice of forum and non-party witness convenience weigh only slightly in favor of denying transfer, while convenience to the parties and the interests of justice each weigh strongly in favor of transfer. "In cases featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *In re Apple, Inc.*, 2014 U.S. App. LEXIS 3787, at *10 (Fed. Cir. Feb. 27, 2014) (Newman, J., dissenting) (quoting *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009)) (internal quotation marks omitted). For these reasons, the Court the Court will DENY the Motion to Supplement, GRANT the Motion to Transfer, and TRANSFER this action to the Northern District of Texas.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order will issue.

_____/s/_____
James R. Spencer
United States District Judge

ENTERED this __5th____ day of March 2014.

13